UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL L. HARVEY,

        Petitioner,

v.                                     Case No. 3:19-cv-1030-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner Michael L. Harvey, an inmate of the Florida penal system, initiated this action on August 29, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Harvey challenges a 2015 state court (Duval County, Florida) judgment of conviction for aggravated assault on a law enforcement officer (LEO) and possession of a firearm by a convicted felon. He raises one claim. See Petition at 4-5.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Answer in Response to Order to Show Cause (Response; Doc. 9). They also submitted exhibits. <u>See</u> Docs. 9-1 through 9-10. Harvey filed a brief in reply. <u>See</u> Reply (Doc. 14). He also submitted exhibits. <u>See</u> P. Exs., Docs. 14-1 through 14-5. This action is ripe for review.

## II. Relevant Procedural History

On October 6, 2014, the State of Florida charged Harvey with aggravated assault on a LEO (count one) and possession of a firearm by a convicted felon (count two) in Duval County case number 2014-CF-8428. <u>See</u> Doc. 9-1 at 71. Harvey entered a guilty plea to the charges on October 26, 2015. <u>See</u> <u>id.</u> at 50-51, Plea of Guilty and Negotiated Sentence; 74-100, Transcript of the Plea Proceeding (Plea Tr.). That same day, the court sentenced Harvey in accordance with the plea agreement to a term of imprisonment of fifteen years with a fifteen-year minimum mandatory for count one, and a term of imprisonment of fifteen years with a three-year minimum mandatory, to run concurrently with the term imposed for count one. <u>See</u> <u>id.</u> at 52-58, Judgment; Plea Tr. at 90. He did not appeal. <u>See</u> https://core.duvalclerk.com, <u>Michael Lord Williamson Harvey v. State of Florida</u>, case no. 2014-FC-8428 (4th Fla. Cir. Ct.).

On November 25, 2015, Harvey filed a pro se motion to withdraw the plea. <u>See</u> Doc. 9-1 at 59-62. He filed an amended motion on December 29, 2015.

After a hearing, the court denied Harvey's request to withdraw the plea on January 4, 2016. See id. at 67. He did not appeal. See https://core.duvalclerk.com, Michael Lord Williamson Harvey v. State of Florida, case no. 2014-FC-8428 (4th Fla. Cir. Ct.).

On October 4, 2016, Harvey filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. See Doc. 9-1 at 5-10. On June 22, 2017, the court dismissed the motion without prejudice as facially insufficient and granted Harvey leave to file a facially sufficient motion. See id. at 14-15. He filed an amended motion on August 22, 2017. See id. at 16-34. In his amended Rule 3.850 motion, Harvey asserted that his trial counsel was ineffective because he: failed to provide Harvey with "real notice of the true nature of the charges against him" (ground one), id. at 18; induced him to plead guilty (ground two), see id. at 20; failed to file a motion to withdraw the plea (ground three), see id. at 23; failed to file a motion to suppress based on assertions related to an illegal stop in violation of the Fourth Amendment, (ground four), see id. at 26; and gave erroneous advice related to the plea agreement (ground five), see id. at 34. On May 30, 2018, the postconviction court denied Harvey's request for postconviction relief, see id. at 40-49, and on July 3, 2018, denied his motion for rehearing, see id. at 112-13. On appeal, Harvey filed a pro se brief, see Doc. 9-2 at 2, and the State filed a notice that it did not intend to file an answer brief, see Doc. 9-3 at 2. On May 8, 2019, the

3

First District Court of Appeal (First DCA) affirmed the court's denial of postconviction relief per curiam, see Doc. 9-4 at 3, and on July 22, 2019, issued the mandate, see id. at 2.

On August 27, 2019, Harvey filed a pro se motion to withdraw the plea pursuant to Florida Rules of Criminal Procedure 3.170(l) and 3.850, asserting manifest injustice due to counsel's ineffectiveness. See Doc. 9-5 at 5-21. The court denied the motion as untimely and successive on September 12, 2019. See id. at 22-23. The First DCA affirmed the court's denial per curiam on June 22, 2020, and on July 20, 2020, issued the mandate. See onlinedocketsdca.flcourts.org, Michael Harvey v. State of Florida, 1D19-3750 (Fla. 1st DCA).

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v.

4

Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Harvey's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual

> determination is not unreasonable merely because the
> federal habeas court would have reached a different
> conclusion in the first instance.'"[3] <u>Titlow</u>, 571 U.S. at
> ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S.
> 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016); <u>see</u> <u>Teasley v.</u>

<u>Warden, Macon State Prison</u>, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020).  Also,

deferential review under § 2254(d) generally is limited to the record that was

before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v.</u>

<u>Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)

"requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

<u>Richter</u>, 562 U.S. at 102. A district court's obligation is "to train its attention"

on the legal and factual basis for the state court's ruling, not to "flyspeck the

---

3 The Eleventh Circuit has described the interaction between § 2254(d)(2) and
§ 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3
(11th Cir. 2016).

state court order or grade it." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing <u>Wilson</u>, 138 S. Ct. at 1191-92). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052.

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. Additionally, the United States Supreme Court has long recognized that Strickland's two-part inquiry applies to ineffective-assistance-of-counsel claims arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under §

10

> 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

Harvey asserts that counsel (Travis A. Reinhold, Florida Bar #140392 and Tyler Vincent Gates, Florida Bar #68816) failed to give him "'real' notice" of the "'true nature' of the charges" against him. Petition at 4; Reply at 3. He states in pertinent part:

11

> I was initially illegally stopped for loitering and prowling (no PC [(probable cause)] found), which resulted in a[n] aggr[avated] assault with a deadly weapon on a LEO and poss[ession] of a firearm by a felon. The record will reflect that the officer had no PC or articulable suspicion. At arraignment[,] the legal scope of duties charge (loitering/prowling) was dropped. The defendant inquired to counsel before pleading about the of[ficer] not being in his legal scope of duties. Counsel said it wasn't a trial def[ense].

Id. Harvey raised the ineffectiveness claim in his Rule 3.850 motion (ground one). See Doc. 9-1 at 18-20. The postconviction court denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> Defendant alleges counsel was ineffective for failing to provide him "notice of the true nature of the charges against him." Defendant maintains he advised counsel that Officer R.C. Santoro ("Officer Santoro") was not in the legal scope of his duties as is required for aggravated assault on a law enforcement officer and that Officer Santoro's stop of Defendant amounted to an illegal [T]erry[4] stop while he was in pursuit of another person, Danielle Church ("Church"). Defendant further avers Church never saw him with [a] weapon and was never in his vehicle. Defendant asserts Officer Santoro had no articulable suspicion Defendant committed a crime and there was no justification for detaining or frisking Defendant because he was in the company of someone suspected of having committed a crime. Defendant states counsel advised him that this was not a legal defense. Moreover, Defendant asserts the Information is missing any reference [to] the essential element that the officer was within the scope of his legal duties.

---

[4] Terry v. Ohio, 392 U.S. 1 (1968).

Initially, this Court notes that Defendant's charging Information sufficiently included all essential elements of the charge, including the allegation that Officer Santoro was "engaged in the lawful performance of his duty." (Ex. F.)[5] To the extent Defendant is alleging this allegation to be insufficient, this Court finds Defendant's allegation equally meritless. In Defendant's plea form, which he signed in agreement thereto, Defendant acknowledged counsel advised him "of the nature of all the charges against me" and "all other facts essential to a full and complete understanding of all offenses" with which Defendant was charged. (Ex. A.)[6] He further acknowledged that he and counsel had discussed all defenses. (Ex. A.) Moreover, Defendant stated he was satisfied with counsel and counsel had answered all his questions to Defendant's satisfaction. (Ex. G at 10-11.)[7]

Additionally, it is clear from the Arrest and Booking Report that Officer Santoro was originally pursuing Church, whom the officer knew was a known prostitute. (Ex. H.)[8] It was only after the Defendant, who was in the driver's seat of a vehicle, informed Officer Santoro he had no license because it was suspended that Officer Santoro asked him to step out of the vehicle. (Ex. H.)[9] After that time, Defendant fled and pointed the gun at Officer Santoro while fleeing. (Ex. H.) Based on these facts, it is likely a motion to suppress would have been unsuccessful, despite Church's purported testimony. Thus, this

---

[5] See Doc. 9-1 at 71, Information.

[6] See Doc. 9-1 at 50, Plea of Guilty and Negotiated Sentence.

[7] See Plea Tr. at 84.

[8] See Doc. 9-1 at 101-03, Arrest and Booking Report.

[9] See Doc. 9-1 at 103 ("The suspect stated that he did not have a driver's license and it was suspended."); see also P. Ex., Doc. 14-3 at 3.

> Court finds counsel was not deficient and finds no reasonable probability Defendant otherwise would have forgone his negotiated plea to face substantially more prison time. Accordingly, this Court finds Defendant is not entitled to relief on this Ground.

Id. at 42-43 (emphasis added). The First DCA affirmed the postconviction court's denial of relief. See Doc. 9-4 at 3.

To the extent that the appellate court decided Harvey's claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Harvey is not entitled to relief on the basis of the ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Harvey's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. There is a strong presumption in favor of competence when evaluating the performance

---

[10] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1192.

prong of the <u>Strickland</u> ineffectiveness inquiry. See <u>Anderson v. Sec'y, Fla.</u> <u>Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Harvey must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v.</u> <u>Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v.</u> <u>Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

At the October 26, 2015 plea hearing, counsel Gates stated:

> For the record, Tyler Gates on behalf of Mr. Harvey.
> Judge, we represent Mr. Harvey in case number 2014-
> 008428. Judge, we're here for jury selection, we have
> reached a disposition in that case, and Judge just to
> give you the big picture, Mr. Harvey did have PRR
> [(prison release reoffender)] that applies to the
> aggravated assault on a law enforcement officer as
> charged in my case. As required under the prison
> release reoffender statute, which the State was
> unwilling to waive, I have spoken to Mr. Miller, Ms.
> Kirch, and Mr. Guy, and none of them are willing to
> waive the PRR, so therefore he at this point has
> decided to enter a plea of guilty to the 15 year
> minimum mandatory in case 2014-CF-008428. So, he
> would be sentenced to and adjudicated guilty of Count
> 1, sentenced to 15 years, with 128 days credit, as a
> prison release reoffender; and Count 2, possession of a
> firearm by a convicted felon, would be 15 years, with
> 128 days credit, that would include a three year
> minimum mandatory as charged. There would be
> mandatory court costs. And both counts would be run
> concurrent.

Doc. 9-1 at 77-78. The court advised Harvey that he faced a maximum penalty

of thirty years of imprisonment with a fifteen-year minimum mandatory as a

prison release reoffender on count one, and thirty years of imprisonment with

a three-year minimum mandatory on count two. See id. at 79-80. Harvey

affirmed that he understood the negotiated plea agreement for fifteen years of

imprisonment. See id. at 80-81. Counsel stated that there was no DNA

evidence that would exonerate Harvey. See id. at 81-82. The court explained:

> By entering your plea today on this one case
> only, you're waiving your right to trial by jury, to have

16

your attorney assist you during that trial; to compel witnesses to attend on your behalf, and to confront and cross-examine witnesses who are presented against you; the right to remain silent, and require the State to prove your guilt beyond a reasonable doubt; and the right to appeal all matters relating to the judgment in your case, including the issues of guilt or innocence. Do you understand that?

Id. at 82. Harvey affirmed that he understood he was waiving the above-described rights. See id. The following colloquy ensued.

THE COURT: Has anyone threatened you, coerced you, or made you any promises to get you to enter this plea?

THE DEFENDANT: No, ma'am.

THE COURT: Are you under the influence today of any substance or mental condition that would affect your ability to understand?

THE DEFENDANT: No, ma'am.

THE COURT: By entering your pleas of guilty, you're acknowledging that you are, in fact, guilty of both charges, is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: What is the highest gr[ade] you completed in school?

THE DEFENDANT: I got two years college, high school[,] and two years of college.

THE COURT: So, you're able to read and write?

THE DEFENDANT: Yes, ma'am.

> THE COURT: Is this your signature on the plea form?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did your attorney go over the form with you in detail?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did he answer all of your questions?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you have any other questions you need to ask your attorney or the Court?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: And are you fully satisfied with his representation?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 83-84. At the court's request, the prosecutor provided a factual basis for

the plea, stating:

> If this case were to proceed to trial, as to Count 1[,] the State would be able to prove beyond a reasonable doubt that Michael Lordwilliamson Harvey on September 3, 2014, in Duval County, Florida, did intentionally threaten by word or act, with a deadly weapon, with a firearm, to do violence to Officer R.C. Santoro, Jr., a law enforcement officer engaged in the lawful performance of his duties, having at the time an apparent ability to do violence, and did point a handgun, which created a well-founded fear in Officer R.C. Santoro, Jr., that violence was imminent, and while committing or attempting to commit the

aforementioned aggravated assault, Michael Lordwilliamson Harvey did actually possess a firearm, contrary to the provisions of Florida Statutes.

As to Count 2, the State would be ready to prove beyond a reasonable doubt that Michael Lordwilliamson Harvey, on September 3, 2014, in Duval County, Florida, did actually possess a firearm, to wit, a handgun, having been convicted of a felony in the Courts of the State of Florida, to wit, aggravated fleeing, in the Circuit Court of and for Duval County Florida, on September 16, 2013, contrary to the provisions of Florida Statutes.

Id. at 84-85. With no objections or legal exceptions (for purposes of the plea)

from defense counsel, the court stated:

I do find there is a factual basis for entry of your plea, and that your plea is freely and voluntarily entered, with a full understanding of the nature and consequences of your plea, and I accept your plea.

. . . .

I do find by a preponderance of the evidence that he meets the criteria to be classified as an habitual offender under Florida Statute section 775.084, and as a prison release reoffender under 775.082(9)(a), therefore the Florida sentencing guidelines will not apply to his sentence. I find that he is a danger to the community[,] and it is necessary for the protection of the public to sentence him on Count 1 as a prison release reoffender, and Count 2 as a[] habitual offender.

**But[,] I will follow the negotiation.** Count 1, I will adjudicate you guilty, sentence you to serve 15 years as a prison release reoffender, that's a 15 year minimum mandatory sentence, with 128 days credit. Concurrent with that, on Count 2, I will adjudicate you

19

> guilty, sentence you to serve 15 years as a[] habitual offender with the three year minimum mandatory, and 128 days credit.
>
> . . . .
>
> Okay. So, they will both run concurrent, both the sentences and the minimum mandatories.

Id. at 85, 89-90 (emphasis added).

"A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case," and "[w]hat is said and done at a plea conference carries consequences." Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007) (citation omitted). A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court). Notably, at the October 26, 2015 plea hearing, Harvey acknowledged that he wanted to enter a guilty plea to both charges and was satisfied with counsel's representation. He also stated that he signed and understood the plea form.

On this record, Harvey has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming arguendo deficient performance by defense counsel

for failing to act as Harvey suggests, Harvey has not shown any resulting prejudice. He has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. If Harvey had proceeded to trial, and the jury had found him guilty of the charges, he would have faced a possible term of imprisonment of thirty years. See Doc. 9-1 at 52, Judgment; Plea Tr.; Fla. Stat. § 784.07(2)(c). His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Harvey is not entitled to federal habeas relief on his ineffectiveness claim in ground one.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Harvey seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Harvey "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 335-36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

21

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Harvey appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

22

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of April, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-1 4/8
c:
Michael L. Harvey, FDOC #J08957
Counsel of Record

23